IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

IN RE:                                             )
RED ROCKET FIREWORKS COMPANY, INC.   ) Case No. 09-62800
                                                   )
                           Debtor.                 )

**DEBTOR'S MOTION FOR ORDER PERMITTING DEBTOR TO INCUR SECURED CREDIT WITH C&A PYRO, LLC PURSUANT TO 11 U.S.C. SECTION 364(c) (WITH CERTIFICATE OF SERVICE TO ALL CREDITORS AND INTERESTED PARTIES)**

COMES NOW Debtor, Red Rocket Fireworks Company, Inc. (hereinafter "Debtor"), by and through its attorney of record, Raymond I. Plaster, and for its Motion for Order Permitting Debtor to Incur Secured Credit with C&A Pyro, LLC Pursuant to 11 U.S.C. Section 364(c), states to the Court as follows:

1. Debtor filed its petition seeking relief under Chapter 11 on December 11, 2007.

2. Debtor is a Missouri corporation in good standing, is continuing in possession of its property and is operating and managing its business as debtor-in-possession pursuant to Sections 1107 and 1108.

3. This Court has jurisdiction pursuant to 28 U.S.C. Section 157 and Section 1334.

4. Debtor is in the business of the sale of retail/wholesale fireworks. Historically, Debtor operated three offices and warehouses, eleven retail stores, and numerous seasonal locations in Ponchatoula, Louisiana (the "Gulf States Division"), Strafford, Missouri (the "Midwest Division"), and Rock Hill, South Carolina (the "East Coast Division"). The Midwest Division has ceased operations, however, Debtor has numerous tracts of real estate in Missouri currently listed for sale. In addition, some Louisiana property is listed for sale.

5. Fireworks sales are a seasonal business, with the majority of the sales being generated during the July 4th and New Year's holiday seasons. The bulk of the company's profits are generated

during these seasons and Debtor is filing its petition at the beginning of the New Year's holiday season which will generate high gross margins from sales.

6. Numerous factors have precipitated the necessity of filing this Chapter 11, namely, the loss of lines of credit to buy product to generate income and a decrease in cash flow due to secured creditors demanding principal reductions. Further, the downturn of the commercial real estate market has hampered Debtor's ability to sell nonoperating properties.

7. As a result of the impairment of normal operations, Debtor has been unable to meet cash flow needs which has resulted in obligations to its trade creditors, taxing authorities, secured lenders and payroll.

8. There is currently scheduled for foreclosure sale property in Missouri on December 22 and 28, 2009, which, if halted and sold in an orderly fashion, could result in a substantial decrease in secured creditor obligations and equity preservation for the benefit of all creditors.

9. Debtor is currently in need of immediate financing to finance the upcoming New Year's holiday sales season. Debtor has made general inquiries to its current suppliers for unsecured credit terms for shipment of necessary inventory, however, Debtor has been unable to secure necessary credit arrangements. Debtor has made general inquiries of third parties for acquiring general unsecured credit, however, at the current time Debtor has not been successful in securing such credit arrangements.

10. The inventory Debtor currently has in its possession is consigned inventory owned by C&A Pyro, LLC ("C&A") pursuant to a May, 2009 Consignment Agreement.

11. In order to meet its New Year's holiday sales, Debtor has received a loan proposal from C&A, attached hereto and incorporated herein by reference as Exhibit "A" which generally provides that C&A will advance DIP financing up to $270,000.00 in the aggregate, allow Debtor

to sell its existing inventory and provide additional inventory as may be agreed between the parties. Debtor is to remit 40% of its retail sales to C&A. An additional 30% of retail sales will be applied to repayment of the $270,000.00 line of credit until it is repaid in full. Wholesale sales shall be made only on terms approved by C&A.

12. The DIP financing is to be secured consistent with the provisions of Bankruptcy Code Section 364(c) providing C&A with a priority over any and all administrative expenses of the kind described in Section 503(b) or Section 507(b), a lien on the property of the estate that is not otherwise subject to a lien, including specifically, any and all rights of the Debtor as to the fireworks inventory or the proceeds therefrom, and a junior lien on all other property of the estate that is subject to existing liens of other creditors. The security granted herein, and the priorities to be granted to the same, shall not interfere with existing property rights of other creditors as of the date of filing. Excluded from this security provision shall be the Debtor's pre-petition retainer deposited in the Raymond I. Plaster, PC Missouri Lawyers Trust Account in the sum of $20,961.00.

13. Debtor has no alternative borrowing source and is unable to obtain unsecured credit. To remain in business, the Debtor must be permitted to obtain credit secured by a lien to assure that the Debtor can begin operations for its New Year's holiday sales season. It is anticipated that once funds are generated, it will be able to negotiate credit terms with other suppliers pursuant to Section 364(a) and file a Plan of Reorganization.

14. Immediate and irreparable harm will result to the estate if the Debtor is not allowed to obtain credit by entering into the post-petition financing agreement with C&A.

WHEREFORE, Debtor prays that after notice of and hearing upon this Motion, this Court enter its Order permitting Debtor to obtain credit on the terms set forth above and for such other and further relief as the Court deems just in the premises.

        /s/Raymond I. Plaster
        Raymond I. Plaster
        Attorney for Debtor
        Missouri Bar No. 35485

        Raymond I. Plaster, P.C.
        2032 E. Kearney, Suite 201
        Springfield, Missouri 65803
        Phone: 417-831-6900
        Fax: 417-831-6901
        RIPlaster@RIP-PC.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the above was served electronically on all creditors, parties in interest or their attorneys of record, according to this Court's notice of electronic filing and that a copy was served by regular mail, postage prepaid, to the creditors, parties in interest or their attorneys of record that did not receive electronic notice on this 15th day of December, 2009.

        /s/Raymond I. Plaster
        Raymond I. Plaster

## DEBTOR IN POSSESSION FINANCING
## AND CONSIGNMENT AGREEMENT

THIS AGREEMENT is made and effective as of this __14th__ day of December 2009, effective upon approval by issuance of an Order of the Bankruptcy Court of an appropriate jurisdiction, by and between **C & A PYRO, LLC**, a Kansas limited liability company, 5200 W. 94th Terrace, Prairie Village, Kansas  66207 ("***Consignor/Lender***") and **RED ROCKET FIREWORKS COMPANY, INC.**, a Missouri corporation, 1166 Porter Hill Road, Rockhill, South Carolina  29730 ("***Consignee/DIP***").

WHEREAS, Consignee/DIP is contemplating filing a Petition in Bankruptcy under Chapter 11 of Title 11 of the United States Code; and

WHEREAS, Consignee/DIP intends to operate its business as a Debtor in Possession under Chapter 11 from and after the date of filing of its Petition in Bankruptcy; and

WHEREAS, Consignee/DIP is in possession of inventory owned by Consignor/Lender and Consignee/DIP has a need to utilize such inventory for purposes of operating its business through the New Year's Holiday Season, 2009 ("New Year's Season"); and

WHEREAS, Consignor/Lender is willing to permit Consignee/DIP to utilize its inventory for sale during the New Year's Season, on the terms of consignment as described in this Agreement; and

WHEREAS, Consignee/DIP is in need of immediate financing to facilitate operation of its business through the New Year's Season, and Consignor/Lender is willing to advance funds, as Debtor in Possession financing, all approved by the Bankruptcy Court, and in accordance with the terms of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises, covenants and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and entirely contingent upon approval by a Bankruptcy Court of appropriate jurisdiction, parties agree as follows:

1.	Identification of Consigned Inventory.  Consignee/DIP is in possession of fireworks inventory owned by Consignor/Lender, all as identified on Exhibit "A" attached hereto and incorporated herein by reference.  In addition, Consignor/Lender is willing to consign additional inventory as may be necessary to effectively sell the existing consigned inventory upon reasonable request of Consignee/DIP, and as approved by Consignor/Lender in it's discretion.  The fireworks inventory described on Exhibit A, and any additional consigned inventory delivered hereafter, shall be collectively referred to herein as the "Fireworks Inventory."

2.	Consignee/DIP's Acknowledgment of Receipt of Inventory.  Consignee/DIP agrees to receive and to accept possession of the Fireworks Inventory and to safeguard the same as if it was its own inventory. Consignee/DIP agrees to keep the Fireworks Inventory insured, in the name of and for the benefit of Consignor/Lender, with an insurance company approved by Consignor/Lender.  In case of any neglect or failure to insure or properly protect the Fireworks Inventory as provided in this Agreement, Consignee/DIP shall indemnify Consignor/Lender and

PJ-723128-v1

shall be responsible for any loss of or damage that may occur to the Fireworks Inventory while in the custody of Consignee/DIP.

3. <u>Sale of Inventory</u>. Consignee/DIP shall devote its best efforts to the sale of the Fireworks Inventory through use of its historical sales methods and resources located in South Carolina, Louisiana, and Tennessee during the New Year's Season.

4. <u>Selling Price</u>. Consignee/DIP agrees to sell the Fireworks Inventory at a price not less than the scale of prices to be established by Consignor/Lender, and Consignor/Lender reserves the right to change prices at any time, effective immediately upon delivery of written notice

5. <u>Wholesale Sales</u>. Consignee/DIP agrees not to affect any wholesale sales (sales other than at retail) without the prior written consent of Consignor/Lender, who reserves the right to reject, in its sole discretion, any such sale on terms which it deems unacceptable.

6. <u>Payment to Consignor/Lender</u>. Consignee/DIP agrees to pay to Consignor/Lender the proceeds of the Fireworks Inventory as follows:

   a. From the proceeds of Consignee/DIP's retail sales of the Fireworks Inventory ("***Retail Proceeds***"), Consignee/DIP shall pay Consignor/Lender, through deposit into an account approved by Consignor/Lender, on a daily basis, forty percent (40%) of all Retail Proceeds collected on sales from the previous business day; and

   b. From the proceeds of Consignee/DIP's wholesale sales of the Fireworks Inventory ("***Wholesale Proceeds***"), Consignee/DIP shall pay Consignor/Lender, through deposit into an account approved by Consignor/Lender daily, eighty percent (80%) of Wholesale Proceeds received as of the previous business day (the Retail Proceeds and Wholesale Proceeds, are sometimes collectively referred to herein as "***Consignment Proceeds***"); and

   c. Consignee/DIP shall have the use of the remaining percentage of the Consignment Proceeds ("***Consignee/DIP's Proceeds"*)* to cover its current operations in accordance with the budget prepared by Consignee/DIP and approved by Consignee/Lender and/or the Bankruptcy Court, except that portion required to be paid to retire the DIP financing described hereafter.

7. <u>Reports to Consignor/Lender.</u> Consignee/DIP agrees to provide daily reports of all sales of Fireworks Inventory made by Consignee/DIP, whether retail or wholesale. In addition, Consignee/DIP shall be required to maintain a sales tax escrow account into which all sale tax collected on retail sales shall be deposited for ultimate payment to appropriate taxing authorities. Consignor/Lender shall have the right at all reasonable times to verify that all sales, collections and deposits are being timely made and remitted during the term of this Agreement. During the term of this Agreement, Consignee/DIP agrees to provide Consignor/Lender with any and all additional financial information, including budgeted sales and expenses compared to actual sales and expense computations, no less frequently than weekly.

PJ-723128-v1                                                    2

8. <u>Expenses</u>. Consignee/DIP agrees to pay all actual expenses arising after delivery of the Fireworks Inventory for the storage, insurance, cartage, transportation, handling, sale and distribution of the Fireworks Inventory, and all expenses incident to such matters, except on a return of merchandise requested by Consignor/Lender, or an account of defects in such merchandise, in which event such expenses shall be paid by Consignor/Lender. The parties agree that Consignee/DIP's expenses shall be funded out of Consignee/DIP's Proceeds, and that Consignor/Lender shall have no obligation to advance funds to Consignee/DIP over and above any specific obligation excepted by Consignor/Lender in this Agreement.

9. <u>Access to Inventory</u>. Consignee/DIP agrees to provide access to Consignor/Lender or Consignor/Lender's agents or employees to inspect the Fireworks Inventory and Consignee/DIP's business operations during Consignee/DIP's normal business hours.

10. <u>Title to Merchandise</u>. Title to and ownership of all Fireworks Inventory consigned under the terms of this Agreement, and all proceeds from the sale of such merchandise, shall remain vested in Consignor/Lender, and be Consignor/Lender's sole property subject only to Consignor/Lender's obligations to release Consignee/DIP's Proceeds as described herein. Consignee/DIP agrees to immediately surrender, without delay, possession of the remaining Fireworks Inventory upon any of the following:

    a. Consignee/DIP's breach of the terms of this Agreement;

    b. Further order of the Bankruptcy Court terminating or modifying the terms of this DIP Financing and Consignment Agreement in any manner which is unacceptable to Consignor/Lender;

    c. The expiration of the term of this Agreement.

11. <u>Debtor in Possession Financing</u>. Consignor/Lender agrees to establish a line of credit for the benefit of Consignee/DIP in the amount of Two Hundred Seventy Thousand Dollars ($270,000.00) (the "DIP Line") by notifying Consignor/Lender in writing of the cash need and providing specific indication as to where the proceeds from the line shall be applied, and to whom paid, which shall be consistent with the terms of the proposed budget, a copy of which is attached as Exhibit "B." Consignor/Lender reserves the right, on valid request of Consignee/DIP as Consignor/Lender deems appropriate, to make payment of approved expenses directly to vendors on behalf of Consignee/DIP. Consignor/Lender shall have no obligation to advance any more than the aggregate amount of $270,000.00, and once advanced shall have no obligation to make additional advances upon repayment.

12. <u>Security for Post-Petition Line of Credit</u>. The DIP Line shall be secured consistent with the provisions of Bankruptcy Code Section 364(c) providing Lender with a priority over any and all administrative expenses of the kind described in Section 503(b) or Section 507(b), a lien on the property of the estate that is not otherwise subject to a lien, including specifically, any and all rights of the Debtor in Possession as to the Fireworks Inventory or the proceeds there from, and a junior lien on all other property of the estate that is subject to existing liens of other creditors. The security granted herein, and the priorities to be granted to the same, shall not interfere with existing property rights of other creditors as of the date of filing. Excluded from this security provision

shall be the Debtor's pre-petition retainer deposited in the Raymond I. Plaster, PC Missouri Lawyers Trust Account in the sum of $20,961.00.

13. <u>Repayment of DIP Financing</u>. Consignee/DIP shall remit thirty percent (30%) of the Retail Proceeds as repayment of the DIP Line at the same time, and on the same terms, that it remits Consignor/Lender's share of the Proceeds of the sale of Fireworks Inventory. Interest shall accrue on all amounts outstanding under the DIP Line at the rate of nine percent (9%) per annum, calculated on the outstanding balance daily. This repayment remittance shall continue until such time as all principal advanced and interest accrued and has been remitted in full, but in any event, the entire amount balance of principal and accrued interest shall be due and payable in full no later than January 4, 2010.

14. <u>Default under DIP Financing Arrangement</u>. In the event that Consignee/DIP fails to make payment to Consignor/Lender as required under this Agreement, is in default under any other provision of this Agreement, violates any outstanding Order of the Bankruptcy Court with respect to its case, or the Bankruptcy case is otherwise converted or dismissed, the full amount drawn upon the DIP line of credit shall become immediately due and payable.

15. <u>Term and Termination.</u> The term of this Agreement shall commence as of the date the terms hereof are approved by Order of the Bankruptcy Court, and shall end January 4, 2010, unless otherwise extended on terms as may approved by the parties, and the Bankruptcy Court. Upon termination, Consignee/DIP shall, if required by Consignor/Lender, return (at Consignor/Lender's expense) all remaining, unsold Fireworks Inventory to Consignor/Lender, in good condition.

16. <u>Excusable Delay</u>. Neither party to this Agreement shall be liable to the other for any loss, cost or damages arising out of, or resulting from, any failure to perform in accordance with the terms of this Agreement where such failure shall be beyond the reasonable control of such party, which, as employed in this Agreement, shall be deemed to mean, but not limited to, acts of God, strikes, lockouts or other industrial disturbances, wars, whether declared or undeclared, blockades, insurrections, riots, governmental action, fire, floods or any other cause not within the reasonable control of either party.

17. <u>Governing Law</u>. The parties hereto agree that this Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Missouri.

18. <u>No Waiver</u>. The failure of either party to this Agreement to insist upon the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of any of the terms or conditions of this Agreement, shall not be construed as late or waiving any terms and conditions, but such terms and conditions shall continue and remain in full force and effect as if no forbearance or waiver had occurred.

19. <u>Acknowledgment of Existence of Filing of UCC Financing Statement</u>. Consignee/DIP hereby acknowledges Consignor/Lender's Financing Statement, as filed with the Secretary of State in the State of Missouri, perfecting its consignment interest in and to the Fireworks Inventory.

20. <u>Invalidity</u>. The invalidity of any part of this Agreement will not and shall not be deemed to effect the validity of any other part. In the event that any provision of this Agreement is

held to be invalid, the parties agree that the remaining provisions shall be deemed to be in full force and effect as if they had been executed by both parties subsequent to the expungement of the invalid provision.

21.     <u>Entire Agreement</u>.  This Agreement shall constitute the entire agreement between the parties, superseding any prior understanding or representation of any kind proceeding the date of this Agreement concerning the matters set fort herein.  No modification of this Agreement or any additional obligation assumed by either party in connection with this Agreement shall be binding unless evidenced in writing signed by each party, and approved by an appropriate Order by the Bankruptcy Court.

22.     <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute but one in the same instrument.

23.     <u>Binding Agreement</u>.  This Agreement shall be binding upon and inured to the benefit of the parties hereto, their successors, trustees and assigns.  Each signatory hereto represents and warrants that he or she has the requisite authority on behalf of their respective party to execute this Agreement, making the same binding upon the party.

IN WITNESS WHEREOF, the parties hereto have set their hand as of the date and year indicated below.

AS CONSIGNEE/DIP:                             AS CONSIGNOR/LENDER:
RED ROCKET FIREWORKS COMPANY,                 C & A PYRO, LLC, a Kansas limited liability
INC., a Missouri corporation                  company

By: /s/Bruce Pyles                            By: _____
Printed Name: Bruce Pyles                     Printed Name: _____
Title: President                              Title: _____

PJ-723128-v1                                  5

Exhibit A

**SC RED ROCKET INVENTORY AFTER WINCO RETURNS**

| | 12/11/2009 | WINCO RETURNS | 7/31/2009 |
|---|---|---|---|
| Warhouse Ending | $95,096.96 | 86,829 | $181,926.16 |
| Assortment Room Ending | $44,559.73 | | 44,559.73 |
| Gorilla Ending | $58,021.50 | | 58,021.50 |
| Porter Rd Ending | $65,134.67 | | 65,134.67 |
| Carowinds Ending | $117,491.87 | | 117,491.87 |
| Circus Ending | $51,253.67 | | 51,253.67 |
| Columbia Ending | $68,889.04 | | 68,889.04 |
| Greenville Ending | $56,273.00 | | 56,273.00 |
| Total Ending Inventory SC | $556,720.44 | $86,829.20 | $643,549.63 |

RR
SC

E:\C & A PYRO\INVENTORY\2009 July 4th SOUTH CAROLINA Ending Inventories PER RR 121109.xls

Red Rocket Fireworks Co. Inc.
Ponchatoula, LA (985-386-5641)

LA Cost
Summer 2009

| Business Name: | LA Cost | |
|---|---|---|
| Contact Name: | Summer 2009 | Tent Invoice |
| Business Address: | 41118 E I-55 Service Road | Summer 2009 |
| City, State, Zip | Ponchatoula, LA 70403 | |

| Item Number | Item Name | Case Packing | Warehouse Ending Inventory | Warehouse Container D | On Hand Warehouse Cost | Port Allen Ending Inventory | On Hand Port Allen | TOTAL On Hand Warehouse Port Allen TOTAL |
|---|---|---|---|---|---|---|---|---|
| | Powder Keg Firecrackers | | | | | | | |
| | | | Warehouse On Hand Total: | | $497,151.55 | | | |
| | | | Port Allen On Hand Total: | | $72,267.91 | | | |
| | | | LA Total Inventory Cost: | | $41,444.70 | | | |
| | | | | | **$610,864.16** (circled) | | | |

*Handwritten: RR LA*